UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| DARWING MORALES,<br>    Petitioner,<br><br>v.<br><br>PATRICIA HYDE, *Field Office Director*; SPECIAL AGENT MICHAEL KROL, *HIS New England Special Agent in Charge*; and ACTING DIRECTOR TODD LYONS,<br>    Respondents. | No. 26-cv-093-JJM-PAS |

ORDER

Darwing Morales brings this petition[1] for a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1. On February 12, 2026, Immigration and Customs Enforcement ("ICE") officials arrested Mr. Morales and brought him to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, where he remains detained today. *Id.* at 3, 5. Mr. Morales now seeks immediate release from ICE custody or, in the alternative, a bond hearing before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a). *Id.* at 8.

This petition is one of many to challenge ICE's policy of subjecting thousands of noncitizens—even those with no criminal records and who have lived in the United

---

[1] Initially, Mr. Morales's wife, Nicolette Rand, moved to file this petition on his behalf as his "next friend." *See* ECF No. 3. Since then, Attorney Amy Retsinas Romero of Deluca, Weizenbaum, Barry & Revens has entered an appearance on Mr. Morales's behalf. *See* ECF No. 7. As such, the Court DENIES as moot Ms. Rand's Motion to Proceed as "Next Friend." ECF No. 3.

States for years and decades—to mandatory detention under 8 U.S.C. § 1225(b) without the opportunity to seek release on bond. The overwhelming majority of courts have found those actions to be illegal.[2] *Barco Mercado v. Francis*, No. 25-cv-6582 (LAK), --- F. Supp. 3d ----, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (explaining that similarly situated petitioners "have prevailed, either on a preliminary or final basis, in 350 [out of 362] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States").

Indeed, this Court alone has ruled against ICE dozens of times in similar habeas cases. *See, e.g.*, *Casun v. Hyde*, No. 25-cv-427, 2025 WL 2806769 (D.R.I. Oct. 2, 2025); *Rodriguez v. Nessinger*, No. 25-cv-505-MSM-AEM, 2025 WL 3306576 (D.R.I. Oct. 17, 2025); *Tomas Elias v. Hyde*, No. 25-cv-540, 2025 WL 3004437 (D.R.I. Oct. 27, 2025); *Astudillo v. Hyde*, No. 25-551, 2025 WL 3035083 (D.R.I. Oct. 30, 2025); *Tejada Polanco v. Hyde*, Nos. 25-cv-552-JJM-AEM, 25-cv-561-JJM-AEM, 2025 WL 3033926 (D.R.I. Oct. 30, 2025); *Herrera Martinez v. Hyde*, No. 25-cv-575-JJM-AEM, 2025 WL 3124025 (D.R.I. Nov. 7, 2025); *Barrera Rodriguez v. Hyde*, No. 25-cv-607-JJM-PAS, 2025 WL 3274606 (D.R.I. Nov. 25, 2025); *Mendes v. Hyde*, No. 25-cv-627-JJM-AEM, 2025 WL 3496546 (D.R.I. Dec. 5, 2025).[3]

---

[2] The Court is aware of the Fifth Circuit's recent ruling to the contrary. *See Buenrostro-Mendez v. Bondi*, No. 25-20496, —— F.4th ——, 2026 WL 323330, at *5 (5th Cir. Feb. 6, 2026). However, that ruling is not binding on this Court, nor does this Court find its reasoning to be persuasive.

[3] This of course includes the many cases that have been resolved in the noncitizen detainees' favor pursuant to text orders issued by the Court. *See, e.g.*, *Geronimo Da Silva v. Nessinger*, No. 25-cv-625-JJM-AEM (D.R.I. Dec. 10, 2025); *Lopez-Lopera v. Nessinger*, No. 25-cv-650-JJM-PAS (D.R.I. Dec. 10, 2025); *Marciano v. Moniz*, No. 25-cv-654-JJM-PAS (D.R.I. Dec. 10, 2025); *Perez-Aguilar v. Nessinger*,

Undeterred, "ICE continues to act contrary to law, to spend taxpayer money needlessly, and to waste the scarce resources of the judiciary." *Lopes v. Jamison*, No. 26-234, 2026 WL 299991, at *1 (E.D. Pa. Feb. 4, 2026); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 854 n.11 (2d Cir. 2020) ("Detention [of noncitizens] costs taxpayers approximately $134 per person, per day, according to ICE's estimates." (citing Dep't of Homeland Sec., U.S. Immigr. & Customs Enf't Budget Overview 14 (2018)).

Charged with defending ICE's actions in court, the Government no longer argues that the countless rulings in favor of noncitizen detainees are incorrect. Instead, the Government acknowledges, as it does here, that should courts "apply the reasoning" of these past rulings, they "would likely reach the same result." ECF No. 8 at 1-2 (citing *Martins De Oliveira v. Hyde*, No. 25-13940-FDS, 2026 WL 74111 (D. Mass. Jan. 9, 2026); *Tomas Elias*, 2025 WL 3004437). In other words, without objection from the Government, courts can continue to find ICE's actions to be illegal and grant the noncitizen detainees' habeas petitions.[4] Finding that the reasoning provided in *Martins De Oliveira* and *Tomas Elias* remains correct, the Court holds that Mr. Morales's continued detention is illegal and that he is entitled to immediate

---

No. 26-cv-028-JJM-PAS (D.R.I. Jan. 21, 2026); *Pinto v. Hyde*, No. 26-cv-086-JJM-PAS (D.R.I. Feb. 18, 2026); *Peixoto Lima Siqueira v. Wesling*, No. 26-cv-096-JJM-AEM (D.R.I. Feb. 18, 2026).

[4] The Government does note, however, that it "reserve[s] all rights to appeal and incorporate[s] by reference the legal arguments presented" in other habeas cases. ECF No. 8 at 1 (citing *Martins De Oliveira v. Hyde*, No. 25-13940-FDS, 2026 WL 74111 (D. Mass. Jan. 9, 2026); *Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437 (D.R.I. Oct. 27, 2025)).

release and to a bond hearing before an IJ. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

The Government has also recognized that Mr. Morales is part of the class recently certified by Judge Patti B. Saris of the U.S. District Court for the District of Massachusetts. *See Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, --- F. Supp. 3d ----, 2025 WL 3687757 (D. Mass. Dec. 19, 2025). This class is composed of:

> All people who are arrested or detained in Massachusetts, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or who are otherwise subject to the jurisdiction of an Immigration Court located in Massachusetts, where:
>
> (a) the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);
>
> (b) for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry or after continuous detention upon arrival;
>
> (c) the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c);
>
> (d) the person is not subject to post-final order detention under 8 U.S.C. § 1231; and
>
> (e) the person is not a person whose most recent arrest occurred at the border while they were arriving in the United States and has been continuously detained thereafter.

*Id.* at 10. In addition, as an individual who entered the United States without inspection, who was not apprehended upon arrival, and who is not subject to detention under § 1226(c), § 1225(b)(1), or § 1231, Mr. Morales is correct in noting

4

that he is also a member of the "Bond Eligible Class" certified by Judge Sunshine S. Sykes of the U.S. District Court for the Central District of California.  ECF No. 9 at 2; *see Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025) (certifying a "Bond Eligible Class" and entering final judgment in the class's favor).[5]

For all these reasons, the Court GRANTS Mr. Morales's Petition.  ECF No. 1. The Government is hereby ORDERED: (1) to provide Darwing Morales with a bond hearing before an IJ under 8 U.S.C. § 1226(a) within seven (7) days of the date of this order; (2) to **release Darwing Morales immediately** pending the bond hearing[6]; and (3) to file a status report within five days of Mr. Morales's bond hearing, stating whether he has been granted bond and, if his request for bond was denied, the reason for that denial.

---

[5] The Bond Eligible Class specifically consists of:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Bautista*, 2025 WL 3713987, at *32.

[6] In light of Winter Storm Hernando and the travel ban recently issued by Rhode Island Governor Dan McKee, *see* Press Release, State of Rhode Island, Governor McKee Declares State of Emergency, Issues Travel Ban Ahead of Blizzard Conditions (Feb. 22, 2026), https://governor.ri.gov/press-releases/governor-mckee-declares-state-emergency-issues-travel-ban-ahead-blizzard-conditions, the Court GRANTS Mr. Morales's request that he be given the opportunity to contact his family from the Wyatt Detention Facility to determine if it would be safer for them to pick him up in Central Falls, Rhode Island, or from ICE's Field Office in Burlington, Massachusetts.  ECF No. 9 at 3 n.1.

There remains a dispute over whether Mr. Morales will be subject to any monitoring conditions. The Government has requested permission to transfer Mr. Morales to ICE's Field Office in Burlington, Massachusetts for the "placement of any monitoring equipment deemed appropriate." ECF No. 8 at 1 n.2. By contrast, Mr. Morales contends that "monitoring equipment imposed by ICE, and not an Immigration Judge, would be unlawful detention" and thus inappropriate. ECF No. 9 at 3 n.1.

The Court agrees with Mr. Morales. The Court has determined that ICE does not have the power to detain Mr. Morales under the legal authority that it claims: 8 U.S.C. § 1225(b). In its briefing, the Government does not claim that Mr. Morales's detention is grounded in any other provision of the Immigration and Nationality Act ("INA"). *See Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) ("The government's power to detain an immigrant must be grounded in a specific provision of the INA."). The Government nevertheless seeks to impose monitoring equipment on Mr. Morales.

However, as various courts within the First Circuit have pointed out, noncitizens remain "in custody" for the purposes of habeas corpus when they are subject to monitoring equipment. *See, e.g.*, *Orellana Juarez v. Moniz*, 788 F. Supp. 3d 61, 67-68 (D. Mass. 2025); *Flores Salazar v. Moniz*, No. 25-11159-LTS, 2025 WL 1703516, at *5-7 (D. Mass. June 11, 2025); *see also Jones v. Cunningham*, 371 U.S. 236, 239 (1963) ("[I]n the United States the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody.").

Of course, the Court has already ordered that ICE must immediately release Mr. Morales from custody. It does not follow then that ICE gets to keep Mr. Morales "in custody" once he leaves the Wyatt Detention Facility. In other words, even though he would no longer be in ICE detention, ICE cannot continue to keep Mr. Morales in custody through the use of monitoring equipment if the agency did not have the authority to lawfully detain Mr. Morales in the first place. Accordingly, the Court will DENY the Government's request to place "any monitoring equipment deemed appropriate." ECF No. 8 at 1 n.2.

Finally, there remains the question of the return of Mr. Morales's property. The Court takes judicial notice of an article from *The New Bedford Light*, which describes how ICE officers carried out Mr. Morales's arrest. *See* Kevin G. Andrade, *ICE Detains New Bedford Worker, Leaving U.S. Citizen Wife to Care for Disabled Family Members*, The New Bedford Light (Feb. 13, 2026), https://newbedfordlight.org/ice-detains-new-bedford-worker-leaving-u-s-citizen-wife-to-care-for-disabled-family-members.

The article explains that, when ICE arrested Mr. Morales in New Bedford on February 12, 2026, officers took him from his black Mazda SUV and left the vehicle on the road, "partially obstructing traffic near the intersection of Covell Street and Belleville Avenue." *Id.* The vehicle was left there for days and, according to Ms. Rand, Mr. Morales's wife, "ICE still has the keys to their only vehicle, and told her to pick them up in Burlington." *Id.* However, "without a license and no means to undertake the 75-mile drive," Ms. Rand has no way of picking up the keys. *Id.*

The Government's actions are unlawful and inappropriate. Indeed, requiring Ms. Rand to travel 75 miles to collect the keys to the couple's vehicle only serves to reward the Government's lawless behavior. As one court so aptly put it, "[t]his is not what civil enforcement looks like in a humane system of government under law." *Aroca v. Mason*, No. 2:26-CV-00057, --- F. Supp. 3d ---, 2026 WL 357872, at *1 (S.D. W. Va. Feb. 9, 2026). Therefore, the Government is further ORDERED to immediately facilitate the return of Mr. Morales's property, including the keys to his black Mazda SUV. As part of the status report to be submitted to the Court, the Government shall inform the Court how it seeks to accomplish this return of property.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

---

John J. McConnell, Jr.
Chief United States District Judge

February 24, 2026